UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

July 1, 2020

LETTER TO COUNSEL

RE: *Steve B. v. Saul*
Civil No. DLB-19-461

Dear Counsel:

On February 15, 2019, Plaintiff Steve B. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his application for Supplemental Security Income ("SSI"). ECF No. 1. I have considered the parties' cross-motions for summary judgment, ECF No. 14 ("Pl.'s Mot."), ECF No. 17 ("Def.'s Mot."), which they fully briefed, ECF No. 14-1 ("Pl.'s Mem."), ECF No. 17-1 ("Def.'s Mem."), ECF No. 18 ("Pl.' Resp."). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Plaintiff protectively filed his application for SSI on February 9, 2015, alleging an onset date of September 1, 2006. Tr. 20, 40, 115, ECF No. 11. His application was denied initially and on reconsideration. *Id.* at 120–23, 127–28. A hearing was held on November 30, 2017, before an Administrative Law Judge ("ALJ"). *Id.* at 16. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. *Id.* at 26. The Appeals Council affirmed the ALJ's decision, *id.* at 5–7, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbar and cervical spines and degenerative joint disease ('DJD') of the left knee with ACL rupture and meniscus tears." *Id.* at 19. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. 416.967(b) except: [Plaintiff] is limited to no climbing of ladders, ropes or scaffolds. [Plaintiff] cannot kneel, crouch or crawl. [Plaintiff] is limited to occasional stooping and climbing of ramps and stairs." *Id.* at 20. The ALJ determined that Plaintiff had no past relevant work. *Id.* at 24. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff had the RFC "to perform the requirements of representative occupations such as cafeteria

*Steve B. v. Saul*
Civil No. DLB-19-461
July 1, 2020
Page 2

attendant . . . , light, cashier II . . . , light, and marker . . . , light." *Id.* at 24–25. Therefore, the ALJ concluded that Plaintiff was not disabled. *Id.* at 26.

Plaintiff argues on appeal that the ALJ's RFC assessment was not supported by substantial evidence. Pl.'s Mem. 8. Plaintiff insists that "the ALJ failed to satisfactorily explain his decision not to credit Plaintiff's symptoms of chronic, disabling pain." *Id.* at 9. Specifically, Plaintiff contends that "the ALJ . . . found Plaintiff's medically determinable impairments could reasonably be expected to cause such disabling symptoms" but "nevertheless determined that Plaintiff's 'statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.'" *Id.* at 10 (quoting Tr. 23). In Plaintiff's view, "the ALJ improperly relied on objective imaging to discount Plaintiff's credible symptoms of pain." *Id.* at 11. Additionally, Plaintiff contends that "the ALJ misapprehended this objective evidence to suggest that Plaintiff's pain symptoms were out of proportion to the diagnostic results." *Id*. According to Plaintiff, "[i]t was erroneous for the ALJ to look to the MRI reports to determine the severity and sincerity of Plaintiff's symptoms of pain since an MRI cannot offer images of pain." *Id*. Plaintiff asserts that "the MRI evidence clearly documents impairments that, as the ALJ had already conceded, 'could reasonably be expected to cause the alleged symptoms' of pain." *Id*. at 12 (quoting Tr. 23).

Plaintiff argues that "the ALJ erred by failing to explain why [other] evidence undermined Plaintiff's symptoms of disabling pain." *Id*. at 13. Plaintiff also contends that "the ALJ failed to recognize records documenting [that] 'he is not able to undergo this right knee [surgery] due to financial constraints as well as living situation'" and "fail[ed] to consider the longitudinal records demonstrating that the 'reduction in symptoms and greater functioning' with medical and injections was only temporary." *Id*. at 14–16 (quoting Tr. 433). These arguments are not persuasive.

The Fourth Circuit in *Hines v. Barnhart* explained that, "[a]lthough a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence." 453 F.3d 559, 565 (4th Cir. 2006); *see also Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) ("[S]ubjective evidence of pain intensity cannot be discounted solely based on objective medical findings."); SSR 16-3p, 2016 WL 1119029 (explaining the evidence an ALJ must consider when evaluating the intensity, persistence, and limiting effects of an individual's symptoms); 20 C.F.R. § 404.1529(c)(3) (listing the factors an ALJ must consider, including a claimant's activities of daily living).

Here, the ALJ determined that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence *and other evidence in the record*." Tr. 23 (emphasis added); *see Chater*, 76 F.3d at 594 (explaining the Fourth Circuit's two-part test for evaluating a claimant's subjective complaints). In making this finding, the ALJ first summarized Plaintiff's subjective complaints and testimony regarding "disabling pain in his left knee, back and neck that prevents him from performing any work." Tr. 23. Regarding his knee, Plaintiff stated that

*Steve B. v. Saul*
Civil No. DLB-19-461
July 1, 2020
Page 3

> he has pain in his knee all day long and it is exacerbated with strenuous activities. The [Plaintiff] indicated that the pain is helped with medication but it doesn't completely resolve it. . . . The [Plaintiff] testified he can only walk 50 to 60 feet because then his knee will go out. He reported that he can stand for about 12 minutes and sit for maybe half an hour before he needs to stand and move around. In a typical day, the [Plaintiff] l[ie]s down and watches television for most of the day when not getting something to eat or showering. The [Plaintiff] does not walk to the mailbox very often because of the pain and indicates that the pain is 10 out of 10 in his knee. . . . The [Plaintiff] cannot lift a gallon of milk. The [Plaintiff] states that he needs a knee replacement.

Tr. 20–21.

Plaintiff also testified that "he experiences back pain and that it is all the time and gives him a nauseous feeling." *Id*. at 21. Lying down alleviates the pain, and it "is helped . . . somewhat by medication." Medication does not help his neck pain, which makes it "hard to turn his head left." *Id.* Plaintiff testified that he still has "pain in his left forearm due to an earlier injury that required a number of stiches [after] he had cut his arm after his fiancee had passed away." *Id.* The ALJ noted that Plaintiff "had mental health treatment for depression and anxiety in 2000 but has not had any recently but still indicates that he has a hard time being around others and he is paranoid." *Id.*

The ALJ then considered this testimony in light of the medical records and other available evidence and concluded that "[w]hile the record does show that [Plaintiff] has limitations due to his physical impairments the record does not support the degree of limitation alleged," and Plaintiff "would still be capable of a reduced range of light work as noted above." *Id.* at 23. He reasoned that "[d]espite [Plaintiff's] degenerative joint disease in his left knee," for which he had "failed conservative treatments" and "full knee replacement" was recommended, Plaintiff "is often noted to have normal gait and there is no indication of use of an ambulatory device."[1] *Id.* Similarly,

---

[1] The ALJ noted that Plaintiff has not had knee replacement surgery. Tr. 23. Plaintiff argues that he cannot be held accountable for not having surgery because he cannot afford it. Pl.'s Mem. 14–15 (citing *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986)). Plaintiff also insists that his "failure to obtain medical treatment that he cannot afford cannot justify an inference that his condition was not as severe as he alleges." Pl.'s Mem. 15 (citing *Mickles v. Shalala*, 29 F.3d 918, 929–30 (4th Cir. 1994)). Defendant notes, however, that "financial constraints" are not the only reason Plaintiff has not had surgery:

> [P]laintiff testified at the hearing and reported to his treating source at Century Spine Center that he had medical insurance. Plaintiff told his treating source at The Orthopedic Center that he wanted to delay surgery until the summer of 2015. When plaintiff returned to The Orthopedic Center in September 2015, plaintiff reported that he wanted to delay surgery due to lack of significant employment. At the hearing, plaintiff testified that he still had not undergone a full knee replacement because his living situation was not equipped with bars, the recovery would be long in duration, and the result would not be permanent. The treatment notes from The

*Steve B. v. Saul*
Civil No. DLB-19-461
July 1, 2020
Page 4

Plaintiff's complaints of "disabling cervical and lumbar spine pain" were inconsistent with the "only moderate degenerative findings of the cervical spine and mild findings of the lumbar spine" and

> [the] indication in the record that [Plaintiff] is not compliant with his pain medication treatment for his lumbar spine and cervical spine as he was discharged from narcotic pain medications at the Kure practice due to an absence of pain medication in his urine screen as well as a failure to take a random urine test.

*Id*. Moreover, "[d]espite [Plaintiff's] allegations of severe limitations the record also shows that with medication and injections [Plaintiff] had a reduction in symptoms and greater functioning. [Plaintiff] even noted hurting his back when moving a refrigerator which is an activity inconsistent with [Plaintiff's] allegations." *Id.*

Finally, the ALJ considered the state agency medical experts' reports and the report from Plaintiff's consultative examination:

> The state agency medical experts opined that [Plaintiff] was capable of work at the light exertional level with occasional postural activities and frequent stooping. These opinions are given substantial weight as they are supported by the medical evidence of record showing that [Plaintiff] had normal gait and mostly 5/5 strength. However, due to subsequent reports of ongoing pain the undersigned has found that [Plaintiff's] postural activities would be greater limited and reduced [Plaintiff's] residual functional capacity accordingly.

> [Plaintiff] was examined at a consultative examination by William Barrish, M.D. on October 6, 2015. Dr. Barrish opined that [Plaintiff] can sit for 8 hours per day, and stand/walk less than 1 hour per day as the patient is currently using a wheelchair. Dr. Barrish opined that [Plaintiff] can lift and carry 5 pounds frequently and 10 pounds occasionally. Dr. Barrish opined that crawling, crouching and stooping should be avoided. This opinion is given little weight as it appears to be based on the fact that [Plaintiff] appeared in a wheelchair. There is no indication in the record that this wheelchair was prescribed to [Plaintiff] or even recommended, and it only appears in the medical record when [Plaintiff] presented to see Dr. Barrish. [Plaintiff's] functioning in the record does not support that [Plaintiff] would require a wheelchair or would be so limited as he was noted to move a refrigerator and had great improvement in functioning with treatment.

---

Orthopedic Center, however, do not substantiate plaintiff's claims. Plaintiff was advised that "anything short of a knee arthroplasty would be temporary at best," not vice versa. Moreover, the treatment notes do not indicate that plaintiff was advised to forgo surgery based on any of these issues.

Def.'s Mem. 9 (citing Tr. 35, 61, 353, 377, 419, 439). In any event, as Plaintiff states, the ALJ "mere[ly] acknowledge[d]" that he had not had surgery, *see* Pl.'s Mem. 14; he did not find that the failure to have surgery showed that Plaintiff's pain was less than he represented it to be. *See* Tr. 23.

*Steve B. v. Saul*
Civil No. DLB-19-461
July 1, 2020
Page 5

Tr. 24 (citations to exhibits omitted).

The ALJ's RFC assessment was not a wholesale rejection of Plaintiff's testimony as not credible. Rather, his testimony was accepted in part and used to reduce Plaintiff's RFC. Further, in assessing Plaintiff's credibility, the ALJ considered the medical evidence, treatment records, opinion evidence, and State agency medical experts' reports. Tr. 21–24. The ALJ provided sound reasoning for discrediting Plaintiff's accounts of pain because they were inconsistent with the medical evidence and other evidence in the record. Moreover, the ALJ did not rely only on MRIs of Plaintiff's lumbar spine.

The ALJ supported his opinion with substantial evidence, including the fact that Plaintiff had been observed with "normal gait" and, with the exception of his appearance in a wheelchair for his examination by Dr. Barrish on October 6, 2015, there was "no indication of use of an ambulatory device." Tr. 22–23. The ALJ also noted that "[t]here is no indication in the record that this wheelchair was prescribed to [Plaintiff] or even recommended." *Id.* at 24. Additionally, the ALJ observed that Plaintiff had been assessed to have "mostly 5/5 strength." *Id.* at 23; *see id.* at 21, 22 (noting that, on February 12, 2015, "[s]trength testing was 5/5 throughout" and on October 6, 2015, "[l]ower extremity strength was 4/5 on the left" and "[u]pper extremity strength was 5/5").

Significantly, the ALJ also relied on Plaintiff's own testimony about moving a refrigerator, an action entirely at odds with the pain he claimed to experience daily. It is true that, as Plaintiff asserts, *see* Pl.'s Mem. 17, Plaintiff went to the emergency room "with chronic low back pain after moving [the] refrigerator the day before." Tr. 22. Nonetheless, the fact remains that Plaintiff, who testified that he "can only walk 50 to 60 feet because then his knee will go out" and "cannot lift a gallon of milk," moved a refrigerator. Moreover, at the emergency room the day after he moved the refrigerator, Plaintiff "stated that he had no incontinence, numbness, tingling or weakness and that he [was] on no medicines" (although he later stated that he "had Flexeril at home"), and he was observed to have "normal gait." Tr. 20–21, 22.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence and that the ALJ applied the correct legal standards.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 14, is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 17, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

*Steve B. v. Saul*
Civil No. DLB-19-461
July 1, 2020
Page 6

   Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

              Sincerely yours,

                 /s/

              Deborah L. Boardman
              United States Magistrate Judge